# KIRKLAND & ELLIS LLP

| | | |
|---|---|---|
| Shanti Sadtler Conway<br>To Call Writer Directly:<br>+1 212 446 5933<br>shanti.conway@kirkland.com | 601 Lexington Avenue<br>New York, NY 10022<br>United States<br>+1 212 446 4800<br>www.kirkland.com | Facsimile:<br>+1 212 446 4900 |

Honorable Naomi Reice Buchwald                                    **VIA ECF**
U.S. District Court for the Southern District of New York

    Re: *The Carnegie Hall Corp. v. Carnegie Hospitality LLC et al.*, 25-cv-04224-NRB

Dear Honorable District Judge Buchwald:

  We represent Plaintiff The Carnegie Hall Corporation ("Carnegie Hall") in the above-captioned case. We write to respond to Defendants' August 4, 2025 letter concerning their proposed motion to dismiss the Complaint. Dkt. 29. Carnegie Hall will oppose the motion.

  This is a blatant case of trademark infringement. Carnegie Hall is an iconic American brand, which has used its CARNEGIE HALL Marks for 130 years. Compl. ¶¶1, 22-23, 32, 43. Taking advantage of this, Defendants intentionally launched a chain of *Carnegie Hall-themed* restaurants called "Carnegie Diner & Café." The name was no coincidence; Defendants admitted that they intentionally selected it to refer to Carnegie Hall. The restaurants and related advertising make that intent clear: the Carnegie Diners are plastered with murals and other images of Carnegie Hall and its performances, and Defendants' advertisements use the CARNEGIE HALL Marks. Defendants have no reason for this blatant infringement other than their admitted intent to trade on Carnegie Hall's reputation and fame. Unsurprisingly, consumers have already been confused. Carnegie Hall tried to settle this dispute for years, but Defendants refused to stop infringing, thus necessitating this litigation.

  The Complaint extensively states claims for relief, and this Court has personal jurisdiction. Defendants' arguments are contrary to well-established law and misrepresent the Complaint.

## I. Carnegie Hall's Trademark-Related Claims Are Properly Pled.

  Carnegie Hall has properly pled its trademark and related claims. Carnegie Hall extensively pleads its registered and common law rights for its CARNEGIE HALL Marks in connection with a wide array of offerings, including entertainment and restaurant services. *E.g.*, Compl. ¶¶26-28, 38-50. Carnegie Hall also extensively pleads facts supporting the likelihood of confusion, *e.g.*, *id.* ¶¶60-85, which is "fact dependent" and cannot be resolved on a Rule 12(b)(6) motion, *Deere & Co. v. MTD Prods., Inc.*, 2001 WL 435613, at *1 (S.D.N.Y. Apr. 30, 2001).

  Defendants' arguments fail. ***First***, Defendants cannot dismiss the Complaint based on their registration, which Carnegie Hall seeks to cancel, or on their inaccurate and insufficient argument that the parties' services differ. A defendant's use can be found infringing, even if it owns a registration; thus, courts regularly cancel registrations. *Med. Depot, Inc. v. Med Way US, Inc.*, 774 F. Supp. 3d 554, 574-75 (E.D.N.Y. 2025). Moreover, "direct competition between the products is not a prerequisite to relief. . . . [T]he likelihood of confusion, not competition, is the real test of trademark infringement." *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 257-58 (2d Cir. 1987) (quotations omitted). Courts regularly find infringement where the parties' services

**KIRKLAND & ELLIS LLP**

Honorable Naomi Reice Buchwald
August 7, 2025
Page 2

differ. *Id.*; *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 150-51 (2d Cir. 2003); *Safeway Stores, Inc. v. Safeway Props., Inc.*, 307 F.2d 495, 497 (2d Cir. 1962). Defendants also ignore Carnegie Hall's allegations of its prior rights for food services, which Carnegie Hall has offered since at least 1986. Compl. ¶¶44-48. Carnegie Hall even has a restaurant across the street from one of Defendants' locations. Further, contrary to Defendants' suggestion, confusion can arise "not just as to source, but also as to sponsorship, affiliation or connection." *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 161 (2d Cir. 2016). Defendants' arguments on the likelihood of confusion are not grounds for dismissal. *Deere*, 2001 WL 435613, at *1.

*Second*, Defendants cannot obtain dismissal by pointing to third-party uses of the word "Carnegie." "[S]ome of the strongest marks are 'common words,'" 1 McCarthy on Trademarks & Unfair Competition §11:87 (5th ed.), and "[t]he significance of third-party trademarks depends wholly upon their usage," *Scarves by Vera, Inc. v. Todo Imports, Ltd. (Inc.)*, 544 F.2d 1167, 1173 (2d Cir. 1976) ("common name" used by others held strong). The Complaint extensively alleges the strength of the CARNEGIE HALL Marks. *E.g.*, Compl. ¶¶22, 32-37, 41. And, unlike Defendants' business, the third-party uses are ***not themed around Carnegie Hall***. *Id.* ¶¶8, 57, 62.

*Third*, Defendants' attempt to argue that their use of Carnegie Hall murals and posters is irrelevant is at odds with trademark law. "[I]n assessing similarity, courts look to the overall impression created by the [marks] and the ***context*** in which they are found." *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 331 (2d Cir. 2020) (emphasis added). Here, it is highly relevant that Defendants' Carnegie Diners are covered in images of Carnegie Hall, including but not limited to official Carnegie Hall posters that use the CARNEGIE HALL Marks. *E.g.*, Compl. ¶¶66, 72-73. Defendants' discussion of trade dress claims under the Lanham Act is irrelevant; Carnegie Hall has not asserted such a claim. Defendants cannot, however, insulate from the likelihood of confusion analysis how they are using their infringing marks, which includes what the restaurants and their related marketing materials look like. Indeed, courts have found infringement where restaurants using similar imagery were likely to cause confusion. *E.g.*, *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 182-83 (5th Cir. 2018) (restaurant using SpongeBob SquarePants imagery infringed plaintiff's common law trademarks); *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985) (themed restaurant infringed plaintiff's marks).

*Fourth*, and similarly, Defendants misstate the relevance of their use of "Landmark" on branded merchandise. One example of Defendants' infringing conduct is their sale of t-shirts that state "57 Street Station CARNEGIE NYC A New York City Landmark." Compl. ¶74. That clearly refers to Carnegie Hall, which is the only "Carnegie" landmark at the 57th Street Subway station. Defendants cannot sell merchandise that trades off of Carnegie Hall's marks and brand.

*Fifth*, Defendants are wrong that their use of "Carnegie Hall" geotags and hashtags on social media constitute nominative fair use. Defendants cannot show any of the requisite elements

## KIRKLAND & ELLIS LLP

Honorable Naomi Reice Buchwald
August 7, 2025
Page 3

of that defense; they have no need to tag "Carnegie Hall," and their use is likely to suggest Carnegie Hall's sponsorship or endorsement. *Int'l Info. Sys.*, 823 F.3d at 168. The posts themselves make Defendants' intent to convey a sponsorship clear, such as leading with: "What would Carnegie Diner be without @carnegiehall?" Compl. ¶¶76, 82. This Court has found similar hashtag use to be infringing in posts where defendant promoted its business. *Chanel, Inc. v. WGACA, LLC*, 2018 WL 4440507, at *2 (S.D.N.Y. Sept. 14, 2018) (#WGACHANEL infringed CHANEL).

**Finally**, to the extent Defendants attempt to assert a laches or similar defense, those fail. They are wrong that Carnegie Hall did not complain for more than four years after learning of the infringement. Carnegie Hall, a non-profit with limited means, has attempted for years to negotiate a resolution. Compl. ¶¶5, 58, 92. Instead of ceasing their infringement, Defendants opened more locations and announced plans for a nationwide chain. Regardless, the laches period is six years, which Defendants cannot meet even by their own inaccurate contentions. *Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018). Moreover, Carnegie Hall has never consented to the infringement. Such defenses are "not suitable for resolution on [the] pleadings." *BJB Ltd. v. iStar Jewelry LLC*, 533 F. Supp. 3d 83, 97 (E.D.N.Y. 2021).

## II. Defendants Are Subject to Personal Jurisdiction in New York.

Defendants are wrong that this Court lacks personal jurisdiction over Defendants Carnegie Diner Secaucus, LLC and Carnegie Diner Vienna LLC (together, "NJ-VA Defendants"). All Defendants are related entities engaging in coordinated and intentional infringement, which is primarily occurring in New York. *E.g.*, Compl. ¶¶7-8, 203-04, 244-45. CPLR §302(a)(3)(ii) confers jurisdiction over the NJ-VA Defendants because they are actively advertising to New York consumers (*e.g.*, at the New York restaurants and online) and are causing harm to Carnegie Hall and consumers in New York. *E.g.*, Compl. ¶¶11-12, 18-19. Their pervasive use of the CARNEGIE HALL Marks is likely to "confuse consumers." *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 106-07 (S.D.N.Y. 2015); *see also* Compl. ¶¶66-67. The NJ-VA Defendants should have been well aware that their conduct would have consequences in New York. *Glenn H. Curtiss Museum of Local History v. Confederate Motors, Inc.*, 2021 WL 514229, at *4-5 (W.D.N.Y. Feb. 11, 2021); *Chatwal*, 90 F. Supp. 3d at 107; Compl. ¶¶69, 72, 76-81. They also derive substantial revenue from interstate commerce by drawing "consumers who have traveled from other states." Compl. ¶¶11-12. *Chatwal*, 90 F. Supp. 3d at 107. Defendants' cited case, which did not involve active advertising through social media or similar facts, is inapposite. *Boyce v. Cycle Spectrum, Inc.*, 148 F. Supp. 3d 256, 260, 270 (E.D.N.Y. 2015) (defendant had "no direct New York contacts"). And both defendants derive substantial revenue from interstate commerce by drawing out-of-state patrons. Compl. ¶¶11-12. *Chatwal*, 90 F. Supp. 3d at 107. Contrary to Defendants' contention, the Complaint specifically pleads the NJ-VA Defendants' role and conduct. Thus, jurisdiction is proper, and there is no reason to force multiple separate, related litigations, which would only waste party and judicial resources.

KIRKLAND & ELLIS LLP

Honorable Naomi Reice Buchwald
August 7, 2025
Page 4

Sincerely,

Shanti Sadtler Conway

Cc: Counsel of Record (via ECF)