## PARDALIS & NOHAVICKA, LLP
— A T T O R N E Y S —

September 9, 2025

**VIA ECF**
Honorable Naomi Reice Buchwald
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 21A.
New York, NY 10007-1312

Re:    *The Carnegie Hall Corporation v. Carnegie Hospitality LLC et al.*; 25-cv-04224-NRB

Dear Respected District Judge Buchwald:

We represent all of the Defendants in the above-captioned action and respectfully submit this letter in response to Plaintiff The Carnegie Hall Corporation's ("Plaintiff") letter filed after 9:00 PM on Friday, September 5, 2025 (ECF No. 34).[1]

By its Complaint, together with 60 largely over broad "initial" discovery demands [**Exhibit A**], the Plaintiff plainly attempts to unilaterally broaden the application of trademark law. It is irrefutable that no party to this litigation owns sole rights to the word "Carnegie." Yet, Plaintiff acts and proceeds as if it does. Despite terming their claims as for trademark infringement, this case is not about an infringing mark. Plaintiff cannot lawfully assert exclusivity over the word "Carnegie." Notably, numerous restaurants, particularly in the vicinity of Carnegie Hall, utilize Carnegie-formative marks and branding, and some, for example, "Carnegie Pizza" (Registration No: 97581738) have registered their marks with the USPTO. Plaintiff's putative claim pertains more to decorative aspects of Defendants' restaurants, rather than the "Carnegie Diner & Café" mark itself.

The Defendants do not compete with Plaintiff that promotes its own mission as a music-centered concert venue – not a restaurant business.[2] Plaintiff does not operate a "Carnegie Hall" branded restaurant. The limited menu café inside Plaintiff's leased building is called the "Weill Café." Plaintiff never registered a "Carnegie Hall" mark for restaurant services which was certainly not an oversight by the well counseled Plaintiff that has registered numerous trademarks over time. Moreover, Carnegie Hall patrons of the arts are not buying a burger or milkshake in lieu of attending events at their venue of choice

Plaintiff's exhaustive demand for discovery ostensibly relating to some "Infringing Mark" constitutes nothing more than a fishing expedition. The same is true with respect to Plaintiff's demands concerning Defendants' contemplated expansion, as a proposed business expansion is not infringement.

---

[1] Plaintiff made noise about Defendants' small delay in serving the Initial Disclosures in the morning of September 4, 2025, when it served its Initial Disclosures at 10:00 PM on September 3, 2025.

[2] *See* About Carnegie Hall, *available at* https://www.carnegiehall.org/About, *last accessed* Sep. 9, 2025.

Notably, much of the discovery sought is of a confidential financial nature and, if anything, goes to damages and not liability – which is far from established and sharply disputed.

It is respectfully submitted that discovery should be stayed pending (a) good faith efforts at settlement under the guidance of Magistrate Judge Netburn; and, if those efforts do not prove successful, then (b) the Defendants' proposed motion to dismiss being made, briefed and decided. Here, a stay is appropriate as the Defendants "substantial arguments for dismissal of many, if not all, of the claims asserted." *Psychic Readers Network, Inc. v A&E Tel. Networks LLC*, 2025 WL 1380956, at *2 (SDNY May 13, 2025) *quoting Negrete v. Citibank N.A.*, 2015 WL 8207466, at *1 (SDNY Dec. 7, 2015). Given the anticipated motion, the Plaintiff's incredibly broad discovery requests "would waste the parties' resources and would constitute an undue burden on Defendants." *Alapaha View Ltd. v Prodigy Network, LLC*, 2021 WL 1893316, at *2 (SDNY May 10, 2021), *quoting HAHA Glob., Inc. v. Barclays*, 2020 WL 832341, at *1 (SDNY Feb. 20, 2020) (finding discovery burdensome where there were a large number of defendants and claims asserted by plaintiff.). Even the document categories highlighted by the plaintiff, including

    i.    Documents related to Defendants' future business plans such as locations of alleged new restaurants or any plans for additional products or services under Defendants' mark. *See, e.g.,* Ex. A; Request Nos. 1-3, 9, 10,

    ii.   Documents related to defendants "revenue" from the operation of the Diners and related merchandise. *See, e.g.,* Ex. A; Request Nos. 24, 43; *see also* 23-35.

    iii.  Documents related to consumer demographics, customer lists and marketing strategies. *See, e.g.,* Ex. A; Request Nos. 13, 14, 18-22, 55-57,

are over broad, extremely burdensome and, therefore improper.

In addressing Plaintiff's discovery demands, specifically Request Nos. 23–25, concerning "revenues," Plaintiff seeks sweeping access to Defendants' financial records—including profit and loss statements, balance sheets, and bank statements—under the pretext of obtaining information concerning "revenues," and customer data. Far from being an effort to limit discovery pending Defendants' motion to dismiss, these requests expand discovery into highly sensitive and competitively valuable information that Plaintiff could exploit outside the confines of this litigation such as Defendants' customer lists and marketing strategies. At best for Plaintiff, these are matters concerning damages which would become relevant only if liability were established on infringement counts. However, again, liability is sharply disputed, and dismissal of infringement claims would be sought should a resolution not be reached in judicial mediation.

Equally improper are Plaintiff's attempts to repackage these same financial demands as relevant to personal jurisdiction. The proper inquiry for jurisdiction is whether out-of-state Defendants purposefully availed themselves of the New York market—not whether Plaintiff can gain unrestricted access to Defendants' internal financial data. Alleged accessibility of Defendants website in New York does not establish personal jurisdiction. *A.W.L.I. Group, Inc. v. Amber*

*Freight Shipping Lines,* 828 F. Supp.2d 557, 573 (E.D.N.Y. 2011), *quoting Virgin Enters. v. Virgin Eyes LLC,* 2009 WL 3241529, *4 (SDNY Sept. 30, 2009). Nor would financial materials of brick and mortar restaurants operating in Virginia and New Jersey reasonably show that the out-of-state Defendants were expecting their alleged conduct to have an impact in New York so as to have them haled into a New York venued Court. *Id.*

As in *Psychic Readers Network, supra*, where the Court recognized that requiring production of Defendants' "gross revenues … from the film, including but not limited to from the production, distribution, licensing and online sales" as well as "all agreements related to any claim of rights to utilize the [ ] character in the Film" would impose a substantial burden, the same is true here. Plaintiff's requests encompass wide-ranging categories of highly sensitive financial and contractual information that would require Defendants to devote significant time, resources, and expense to produce.

The prospective motion to dismiss will raise threshold issues anticipated to significantly narrow the scope of discovery. In these circumstances, requiring Defendants to incur the heavy burden of responding to expansive discovery now would be inefficient and wasteful warranting the stay of discovery until the Court rules on Defendants' motion. *Izuogu v. Credit Agricole Corporate and Investment Bank,* 2024 WL 4903723 (SDNY November 27, 2024); *Renois v. WVMF Funding, LLC,* 2021 WL 1721818 *2 (SDNY April 30, 2021). To the extent that any discovery is to proceed, it should be sharply circumscribed to what is absolutely necessary. And, under such circumstances, the Plaintiff then must promptly produce all information concerning allegations of infringement and alleged harm, including lost customers, lost sales, dilution of its purported marks, and documents concerning the commercial value, monetization, and alleged fame of its intellectual property.

Further, Defendants respectfully request that should efforts at court mediated settlement unfortunately not prove fruitful, the Court enter a briefing schedule regarding Defendants' Motion to Dismiss.

We thank Your Honor for your time and consideration of this matter.

Respectfully submitted,
PARDALIS & NOHAVICKA, LLP

By: /s/*Eleni Melekou*
Eleni Melekou

cc (via ECF):
All appearing counsel