# KIRKLAND & ELLIS LLP

Shanti Sadtler Conway
To Call Writer Directly:
+1 212 446 5933
shanti.conway@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States
+1 212 446 4800
www.kirkland.com

Facsimile:
+1 212 446 4900

Honorable Naomi Reice Buchwald                                  **VIA ECF**
U.S. District Court for the Southern District of New York

   Re: *The Carnegie Hall Corp. v. Carnegie Hospitality LLC et al.*, 25-cv-04224-NRB

Dear Judge Buchwald:

  We represent Plaintiff The Carnegie Hall Corporation ("Carnegie Hall") in the above-captioned case. We write to respond to the many inaccuracies in Defendants' September 9, 2025 letter, Dkt. 36, which also goes beyond the scope of Your Honor's request during the September 4, 2025 conference that Carnegie Hall submit an outline of proposed discovery, so that discovery can commence during the pendency of Defendants' forthcoming motion to dismiss.[1]

  ***First***, Defendants' letter confirms that their forthcoming motion to dismiss cannot succeed as it relies on factual arguments that cannot be decided on the pleadings. Defendants also continue to misrepresent the facts and the law. As to the facts, Defendants attempt to rewrite the Complaint by misrepresenting that "this case is not about an infringing mark," but rather is purely about "decorative aspects of Defendants' restaurants." Dkt. 36 at 1. But the Complaint is clear that this case is about "Defendants willfully decid[ing] to open an expanding chain of restaurants ***called 'Carnegie Diner and Café'***" which are "***using CARNEGIE-formative trademarks***." Dkt. 1 ¶2 (emphases added). The claims in the Complaint are explicitly for trademark infringement, trademark dilution, and unfair competition.[2] *Id.* ¶¶94-369. As the plaintiff, Carnegie Hall is "the master of the complaint," and Defendants cannot rewrite its claims. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987). Defendants also are wrong that the parties "do not compete." Dkt. 36 at 1. Carnegie Hall has long offered restaurant services, food and beverages, including in its Carnegie Hall Weill Café.[3] *E.g.*, Dkt. 1 ¶¶1, 44-48. Contrary to Defendants' claim, that café is explicitly branded under the CARNEGIE HALL mark. *Id.* ¶¶44-45.

  As to the law, Defendants incorrectly suggest that the parties must compete. Rather, "direct competition between the products is not a prerequisite to relief. . . . [T]he likelihood of confusion, not competition, is the real test of trademark infringement." *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 257-58 (2d Cir. 1987) (internal quotations omitted). The likelihood of confusion includes consumers being confused into thinking that the Carnegie Diners are affiliated with or sponsored by Carnegie Hall, which is exactly what Defendants have intentionally conveyed. For instance, Defendants have targeted Carnegie Hall patrons and encouraged them to

---

[1] The Court had not requested a response from Defendants regarding Carnegie Hall's outline of proposed discovery, nor did Defendants request permission to file such a response during the September 4th hearing.

[2] Requests related to the Infringing Marks are not, as Defendants contend, a "fishing expedition." Dkt. 36 at 1. Rather, they go to the heart of Carnegie Hall's claims.

[3] It does not matter that Carnegie Hall has not "registered a 'Carnegie Hall' mark for restaurant services." Dtk. 36 at 1. Trademark rights are based on use. *Iancu v. Brunetti*, 588 U.S. 388, 391 (2019).

# KIRKLAND & ELLIS LLP

Honorable Naomi Reice Buchwald
September 11, 2025
Page 2

"Enjoy dinner at Carnegie Diner before or after!" a Carnegie Hall performance, and offered an "***exclusive Carnegie Hall 3-Course Pre-Fixe Theatre Menu***." Dkt. 1 ¶¶76, 81 (emphasis added). Nor can Defendants alter the black-letter-law rule that infringing marks are assessed in "the overall context in which the marks appear," which here includes what the Carnegie Diners look like and how they are advertised. *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopolous Inc.*, 228 F.3d 56, 66 (2d Cir. 2000). And while Defendants continue to point to third-party uses of the word "Carnegie," Dkt. 36 at 1, such uses (which, to be clear, are a far cry from Defendants' pervasive and intentional infringement) do not excuse Defendants' infringement, *see* Dkt. 30 at 2 (collecting authorities).

***Second***, Defendants' attempt to reargue for a stay of discovery should be rejected. At the September 4th conference, the Court indicated that Defendants' forthcoming motion to dismiss was unlikely to be granted in full (if at all). The Court also indicated that it made sense for discovery to commence, as opposed to staying discovery completely, and thus directed Carnegie Hall to submit an outline of proposed discovery for the pendency of Defendants' motion. Carnegie Hall did precisely that. Dkt. 34. Defendants' subsequent attempt to reargue for a complete stay of discovery, and their misrepresentation of Carnegie Hall's proposed discovery, came as a surprise. Regardless, and as discussed during the September 4th conference, "[d]iscovery is not normally stayed during the pendency of a motion to dismiss, absent a showing of good cause." *Brisco v. City of New Haven*, 2009 WL 5184357, at *3 (D. Conn. Dec. 23, 2009). None of the three factors for evaluating good cause support granting a stay here. *Bennett v. Cuomo*, 2023 WL 2021560, at *2 (S.D.N.Y. Feb. 15, 2023). In particular:

1.  The initial discovery sought is narrow and limited. Carnegie Hall requested only limited interrogatories to identify persons and documents, pursuant to Local Rule 33.3(a), and only 19 narrow document requests.[4] Dkt. 34 at 2-4. Defendants have not provided hit counts, "costs associated with discovery, or any other indicator that might demonstrate why discovery will be burdensome." *Bennett*, 2023 WL 2021560, at *4. Carnegie Hall does not request "sweeping access to Defendants'" documents. Dkt. 36 at 2. Rather, it requests, for instance, documents sufficient to show: (i) Defendants' plans to open more restaurants, (ii) Defendants' revenues, and (iii) certain limited information about Defendants' consumers, which relate in part to Defendants' jurisdictional challenge. Dkt. 34 at 2-4. These requests are narrowly tailored and should be readily producible (*e.g.*, Defendants surely know which locations it plans to open, how much money it has made, and how many consumers have signed up for its email marketing alerts). Defendants admit that revenues are relevant to damages, Dkt. 36 at 2, which in turn is relevant to settlement negotiations. Further, to the extent any

---

[4] Defendants do not discuss the limited, targeted requests in Carnegie Hall's September 5th letter at all. Rather, they argue about Carnegie Hall's previously served Requests for Production, which are ***not*** at issue. Dkt. 36, 36-1.

# KIRKLAND & ELLIS LLP

Honorable Naomi Reice Buchwald
September 11, 2025
Page 3

> of these documents contain confidential information, that "is not a proper basis for refusing production," and the parties already have agreed that they will negotiate a protective order. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006).

2. Defendants' forthcoming motion "will not meaningfully change the scope or burden of discovery," *id.*, as their jurisdictional arguments are limited to two of the six defendants (who are all related and operating the same infringing business), and their merits-based arguments are inappropriate at the pleading stage. *See* Dkt. 30.

3. Staying discovery would only delay this case unnecessarily, and prejudice Carnegie Hall while Defendants continue to infringe and expand. *Nutraquest Inc. v. All Am. Pharm. & Nat. Foods Corp.*, 2007 WL 121448, at *5 (D.N.J. Jan. 11, 2007) (stay inappropriate where defendant continued to "actively us[e] the infringing marks"). Even since Carnegie Hall filed suit, Defendants have announced two ***additional*** locations in New York, which they claim will open in 2025.[5]

Defendants are wrong that certain discovery requests are irrelevant to personal jurisdiction. The location of consumers who interact with Defendants' website and social media posts is relevant under CPLR 302(a)(3)(ii). *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 106-07 (S.D.N.Y. 2015) (denying motion to dismiss; sending email newsletters to New York consumers supported jurisdiction); *Glenn H. Curtiss Museum of Local History v. Confederate Motors, Inc.*, 2021 WL 514229, at *4-5 (W.D.N.Y. Feb. 11, 2021) (social media advertising sufficient). The extent to which the relevant Defendants have received revenue from New York and other out-of-state residents also is relevant.[6] *Chatwal*, 90 F. Supp. 3d at 107.

Carnegie Hall respectfully requests that the Court re-affirm its indication that discovery should not be stayed entirely during the pendency of Defendants' forthcoming motion to dismiss, and order that Defendants provide the discovery requested in Carnegie Hall's September 5th letter.

---

[5] Defendants' cases do not support staying discovery—they involved far more discovery requests and strong motions to dismiss that would have disposed of the entire case. Dkt. 36 at 2-3.

[6] Defendants' cases regarding jurisdiction are inapposite. *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 562, 573 (E.D.N.Y. 2011) (only online activity was a "vague statement" that defendant served "all points of USA and Canada to and from all worldwide cities"); *Virgin Enters. Ltd. v. Virgin Eyes LAC*, 2009 WL 3241529, at *5-6 (S.D.N.Y. Sept. 30, 2009) (applying CPLR 302(a)(3)(i), not CPLR 302(a)(3)(ii)).

## KIRKLAND & ELLIS LLP

Honorable Naomi Reice Buchwald
September 11, 2025
Page 4

Respectfully submitted,

**KIRKLAND & ELLIS LLP**

*/s/ Shanti Sadtler Conway*
Shanti Sadtler Conway
*Attorney for Plaintiff*

cc: Counsel of Record (via ECF)